STATE OF CONNECTICUT *v.* SAMPHANH PHOMMACHANH
(13601)

SCHALLER, SPEAR and HENNESSY, Js.

Argued June 5—decision released August 15, 1995

*Judith Rossi,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Joseph Harry,* assistant state's attorney, for the appellant (state).

SCHALLER, J. The state appeals from the judgment rendered by the trial court granting the defendant's motion to dismiss following the suppression of evidence obtained in the course of a *Terry*[1] stop. The state claims that the trial court improperly granted the defendant's motion to suppress. We reverse the judgment of the trial court.

The following facts are relevant to our disposition of this appeal. On October 18, 1993, at approximately 2:30 p.m., Officer Ernest Garcia, Jr., and Officer Juan Gonzalez of the Bridgeport police department pulled over a vehicle that had passed them in a no passing zone. Garcia approached the driver, Soutsaychay Sangphilon, and asked for identification, which Sangphilon produced.

When Gonzalez approached the passenger side of the vehicle he saw a bullet hole in the vehicle. Gonzalez asked the defendant, seated in the front passenger seat, for identification. The defendant appeared to be holding something close to his body with his right arm. The defendant, in response to the request for identification, reached with his left hand to retrieve identification from his right rear pocket. Gonzalez reached into the vehicle, patted the defendant's coat in the area where the defendant appeared to be concealing something and felt a hard object. Gonzalez ordered the defendant out of the car, patted down the defendant again, and removed a .45 caliber firearm from the defendant's waistband.

The defendant was arrested and charged with carrying a pistol without a permit in violation of General

[1] *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1986).

Statutes § 29-35 (a) and stealing a firearm in violation of General Statutes § 53a-212. The defendant pleaded not guilty to the charges and filed a motion to suppress the gun as evidence. The trial court granted the motion to suppress, and then granted the defendant's motion to dismiss.

The state argues that the trial court improperly applied *State* v. *Oquendo*, 223 Conn. 635, 613 A.2d 1300 (1992), in ruling on the motion to suppress. The state contends, in particular, that the trial court improperly suppressed the gun because it failed to address whether Gonzalez had a reasonable articulable suspicion that the defendant was armed and dangerous. The record reveals that, after finding that the motor vehicle stop was reasonable, the trial court found that the search of the defendant was not justified because there was no reasonable articulable suspicion that a crime had been committed or was about to be committed.

In *Oquendo*, our Supreme Court held that under article first, §§ 7 and 9, of the Connecticut constitution a seizure occurs when "a reasonable person would have believed that he was not free to leave." (Internal quotation marks omitted.) Id., 647. Moreover, "[i]n determining whether the detention was justified in a given case, a court must consider if [b]ased upon the whole picture the detaining officers [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity." (Internal quotation marks omitted.) Id., 654. The trial court properly applied *Oquendo* in determining the validity of the motor vehicle stop of the defendant. Garcia and Gonzalez were clearly justified in stopping the defendant and Sangphilon when the car they were in passed the officers in a no passing zone. See *State* v. *Dukes*, 209 Conn. 98, 122, 547 A.2d 10 (1988).

The trial court further concluded, however, that after Sangphilon produced proper identification there was

no reason to suspect that the defendant and Sangphilon were involved in any type of criminal enterprise.[2] On the basis of that reasoning, the trial court suppressed as evidence the gun found in the defendant's waistband. The trial court, however, did not apply the appropriate standard for determining the legitimacy of the patdown search. " '[W]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.' " *State* v. *Trine*, 37 Conn. App. 561, 569, 657 A.2d 675 (1995), quoting *State* v. *Williams*, 157 Conn. 114, 118, 249 A.2d 245, cert. denied, 395 U.S. 927, 89 S. Ct. 1783, 23 L. Ed. 2d 244 (1968).

We conclude that the trial court improperly applied the *Oquendo* standard in determining whether the weapons search was justified. The trial court, instead, should have determined whether Gonzalez was justified in searching the defendant in order to ascertain whether the defendant was carrying a weapon. *State* v. *Williams*, supra, 157 Conn. 118.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

---

[2] The trial court stated that "at that point the officers should have just gone on with their business."